## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PRINNA BOUDREAU, MARY CAMPBELL, RICARDO CAMPOS, JEFF ECK-LONDON, NORA FREEMAN, STEPHEN GRICE, BETH RODGERS, and MATTHEW SMITH, and on behalf of themselves and all others similarly situated, | Case No. 1:21-cv-11095 |
| | CLASS ACTION COMPLAINT |
| *Plaintiff*, | DEMAND FOR JURY TRIAL |
| v. | |
| KONINKELIJKE PHILIPS N.V.; PHILIPS NORTH AMERICA LLC; and PHILIPS RS NORTH AMERICA LLC; | |
| *Defendants.* | |

Plaintiffs Prinna Boudreau ("Plaintiff Boudreau"), Mary Campbell ("Plaintiff Campbell"), Ricardo Campos ("Plaintiff Campos"), Jeff Eck-London ("Plaintiff Eck-London"), Nora Freeman ("Plaintiff Freeman"), Stephen Grice ("Plaintiff Grice"), Beth Rodgers ("Plaintiffs Rodgers") and Matthew Smith ("Plaintiff Smith" and collectively with Plaintiff Boudreau, Plaintiff Campbell, Plaintiff Campos, Plaintiff Eck-London, Plaintiff Freeman, Plaintiff Grice, Plaintiff Rodgers, and Plaintiff Smith, "Plaintiffs"), themselves and the class and subclasses of all others similar situated as defined below, for their complaint against defendants Koninklijke Philips N.V. ("Royal Philips"), Philips North America LLC ("Philips NA"), and Philips RS North America LLC ("Philips RS") (collectively, Royal Philips, Philips NA, and Philips RS are "Philips" or the "Defendants"), alleges the following based on (a) personal knowledge, (b) investigation of counsel, and (c) information and belief.

## INTRODUCTION

1.      Plaintiffs bring this action on behalf of themselves and a proposed class and subclasses of purchasers of Philips Bi-Level Positive Airway Pressure ("BiPAP"), Continuous Positive Airway Pressure ("CPAP"), and mechanical ventilator devices, which contain polyester-based polyurethane ("PE-PUR") sound abatement foam ("PE-PUR Foam").

2.      On April 26, 2021, Philips disclosed it had determined that there were risks that the PE-PUR Foam used in certain devices manufactured by Philips may degrade under certain circumstances. On June 14, 2021, Philips issued a recall of devices containing PE-PUR Foam, noting that Philips had determined that the PE-PUR Foam was at risk for degradation into particles which may enter the device's pathway and be ingested or inhaled by users of devices which contain PE-PUR Foam, as well as off-gassing certain chemicals. Philips recommended that patients using Philips BiPAP and CPAP devices immediately discontinue their use of their devices.

3.      Plaintiffs all owned or leased Philips CPAP, BiPAP, or mechanical ventilator devices prior to June 14, 2021. Plaintiffs subsequently learned that their CPAP, BiPAP, or mechanical ventilator devices had been recalled by Philips due to the presence of a dangerous PE-PUR Foam that could cause them to suffer from adverse health effects, including, *inter alia*, cancer. Plaintiffs have been advised by Philips to discontinue use of their devices. Plaintiffs must now spend a substantial amount of time and incur substantial expenses to replace the device.

4.      Plaintiffs seek to recover damages based on, *inter alia*, Philips' negligence, breach of contract, breach of express warranty, breach of implied warranties, and breaches of various state consumer protection laws in connection with its manufacture, marketing and sales

of devices containing PE-PUR Foam on behalf of themselves and the proposed Class and Subclasses.

## PARTIES

5.      Plaintiff Prinna Boudreau is a citizen of the State of Minnesota and resident of Hennepin County, Minnesota.

6.      Plaintiff Mary Campbell is a citizen of the State of California and resident of Calaveras County, California.

7.      Plaintiff Ricardo Campos is a citizen of the State of California and resident of Tulane County, California.

8.      Plaintiff Jeff Eck-London is a citizen of the State of New York and a resident of Erie County, New York.

9.      Plaintiff Nora Freeman is a citizen of the State of New York and a resident of Westchester County, New York.

10.      Plaintiff Stephen Grice is a citizen of the State of Florida and a resident of Seminole County, Florida.

11.      Plaintiff Beth Rodgers is a citizen of the State of Virginia and a resident of Chesterfield County, Virginia.

12.      Plaintiff Matthew Smith is a citizen of the Commonwealth of Pennsylvania and a resident of Pike County, Pennsylvania.

13.      Defendant Koninklijke Philips N.V. ("Royal Philips") is a Dutch multinational corporation with its principal place of business located in Amsterdam, Netherlands. Royal Philips is the parent company of Philips NA and Philips RS.

14.     Defendant Philips North America LLC is a Delaware corporation with its principal place of business located at 222 Jacobs Street, Floor 3, Cambridge, Massachusetts 02141. Philips North America is a wholly-owned subsidiary of Koninklijke Philips N.V. Upon information and belief, Philips NA manages the operation of Royal Philips' various lines of business, including Philips RS, in North America.

15.     Defendant Philips RS North America LLC ("Philips RS") is a Delaware corporation with its principal place of business located at 6501 Living Place, Pittsburgh, Pennsylvania 15296. Philips RS was formerly operated under the business name Respironics, Inc. ("Respironics"). Royal Philips acquired Respironics in 2008.[1]

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), because this case is a class action where the aggregate claims of all members of the proposed Classes exceed $5,000,000.00, exclusive of interest and costs, and the Plaintiffs and most members of the proposed Classes are citizens of a state different from Defendants.

17.     Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b) and (c) and 18 U.S.C. § 1965, because Defendants transact business in, are found in, and/or have agents in this District, and because some of the actions giving rise to this complaint took place within this District.

18.     The Court has personal jurisdiction over the Defendants. Defendants have transacted business, maintained substantial contacts, and/or committed overt acts in furtherance of the illegal scheme and conspiracy throughout the United States, including in this District. The

---

[1] *Philips announces completion of tender offer to acquire Respironics*, WEB WIRE, https://www.webwire.com/ViewPressRel.asp?aId=61199 (accessed June 17, 2021).

scheme and conspiracy have been directed at, and have had the intended effect of, causing injury to persons residing in, located in, or doing business throughout the United States, including in this District.

**FACTUAL BACKGROUND**

I.      **Continuous Positive Airway Pressure Therapy**

19.     Continuous Positive Airway Pressure ("CPAP") therapy is a common nonsurgical treatment primarily used to treat sleep apnea. CPAP therapy typically involves the use of a nasal or facemask device, and a CPAP device helps individuals breathe by increasing the air pressure in an individual's throat.

20.     Sleep Apnea is a common sleep disorder characterized by repeated interruptions in breathing throughout an individual's sleep cycle. These interruptions, called "apneas," are caused when the soft tissue in an individual's airway collapses. The airway collapse prevents oxygen from reaching the individual's lungs which can cause a buildup of carbon dioxide. If the individual's brain senses the buildup of carbon dioxide, it will briefly rouse the individual from sleep so that the individual's airway can reopen. Often these interruptions are so brief that the individual will not remember. Despite the brevity of the interruptions, the sleep cycle disruption caused by sleep apnea can dramatically impact a person's lifestyle, including negatively impacting energy, mental performance, and long-term health. CPAP therapy helps treat sleep apnea by preventing the person's airway from collapsing while breathing during sleep cycles, which can help prevent interruptions in breathing.

II.     **Bi-Level Positive Airway Pressure Therapy**

21.     Bi-Level Positive Airway Pressure ("BiPAP") therapy is a common alternative to CPAP therapy for treating sleep apnea. Similar to CPAP therapy, BiPAP therapy is nonsurgical

5

and involves the use of a nasal or facemask device to maintain air pressure in an individual's airway. BiPAP is distinguishable from CPAP therapy, however, because BiPAP devices deliver two alternating levels—inspiratory and expiratory—of pressurized air into a person's airway, rather than the single continuous level of pressurized air delivered by a CPAP device. The inspiratory positive airway pressure assists a person as a breath is taken in. Conversely, the expiratory positive airway pressure is applied to allow a person to comfortably breathe out. BiPAP devices deliver one level of pressurize air (the inspiratory positive level) to assist as a person inhales, and another level (the expiratory level) as a person exhales.

### III.    Mechanical Ventilation

22.    Mechanical ventilation is a treatment to help a person breathe when they find it difficult or are unable to breathe on their own. A mechanical ventilator pushes airflow into the patient's lungs to help them breathe. Mechanical ventilation may be invasive ventilation with a tube inserted into the patient's airway, performed in the intensive care unit in the hospital or a long-term institutional setting. Non-invasive ventilation can be used at home by people with respiratory difficulties.

### SUBSTANTIVE ALLEGATIONS

23.    Philips developed, marketed, and sold a lineup CPAP and BiPAP respirator devices under its "Sleep & Respiratory Care" portfolio designed to assist individuals with a number of sleep, breathing, and respiratory conditions, including sleep apnea. Philips' CPAP and BiPAP respirator devices typically cost several hundred, if not thousands of dollars. Philips has sold millions of these devices in the United States.

IV.     **Philips Sleep & Respiratory Care Devices Were Endangering its Users**

24.     On April 26, 2021, as part of its Quarterly Report for Q1 2021, Philips disclosed for the first time, under a section entitled "Regulatory Update," that device user reports had led to a discovery that the type of PE-PUR "sound abatement" foam Philips used to minimize noise in several CPAP and BiPAP respirators posed health risks to its users. Specifically, Philips disclosed that "the [PE-PUR] foam may degrade under certain circumstances, influenced by factors including use of unapproved cleaning methods, such as ozone[], and certain environmental conditions involving high humidity and temperature."[2]

25.     Over a month later, on June 14, 2021, Philips announced that it was recalling several models of BiPAP, CPAP, and mechanical ventilator devices "to address identified potential health risks related to the polyester-based polyurethane (PE-PUR) sound abatement foam component in these devices."[3] Specifically, Philip announced that it had determined that the "PE-PUR foam may degrade into particles which may enter the device's air pathway and be ingested or inhaled by the user, and the foam may off-gas certain chemicals."[4] In total, Philips announced that "[b]etween 3 million and 4 million" devices are targeted in the recall.[5]

---

[2] *First Quarter Results*, PHILIPS (Apr. 26 2021), https://www.results.philips.com/publications/q121/downloads/pdf/en/philips-first-quarter-results-2021-report.pdf (accessed June 16, 2021).

[3] *Philips issues recall notification\* to mitigate potential health risks related to the sound abatement foam component in certain sleep and respiratory care devices*, PHILIPS (June 14, 2021), https://www.philips.com/a-w/about/news/archive/standard/news/press/2021/20210614-philips-issues-recall-notification-to-mitigate-potential-health-risks-related-to-the-sound-abatement-foam-component-in-certain-sleep-and-respiratory-care-devices.html (accessed June 16, 2021).

[4] *Id.*

[5] Associated Press, *Philips recalls ventilators, sleep apnea machines due to health risks*, NBC NEWS, https://www.nbcnews.com/business/consumer/philips-recalls-ventilators-sleep-apnea-machines-due-health-risks-n1270725 (accessed June 16, 2021).

26.     The list of the devices recalled by Phillips (the "Recalled Devices") include:

| Philips CPAP and BiLevel PAP Devices Subject to Recall[6] | |
| --- | --- |
| **Device Name/Model** | **Type** |
| Philips E30 (Emergency Use Authorization) | Continuous Ventilator, Minimum Ventilatory Support, Facility Use |
| Philips DreamStation ASV | Continuous Ventilator, Non-life Supporting |
| Philips DreamStation ST, AVAPS | Continuous Ventilator, Non-life Supporting |
| Philips SystemOne ASV4 | Continuous Ventilator, Non-life Supporting |
| Philips C Series ASV, S/T, AVAPS | Continuous Ventilator, Non-life Supporting |
| Philips OmniLab Advanced Plus, In-Lab Titration Device | Continuous Ventilator, Non-life Supporting |
| Philips SystemOne (Q Series) | Non-continuous Ventilator |
| Philips DreamStation, CPAP, Auto CPAP, BiPAP) | Non-continuous Ventilator |
| Philips DreamStation GO, CPAP, APAP | Non-continuous Ventilator |
| Philips Dorma 400, 500, CPAP | Non-continuous Ventilator |
| Philips REMStar SE Auto, CPAP | Non-continuous Ventilator |

| Philips Mechanical Respirator Devices Subject to Recall[7] | |
| --- | --- |
| **Philips Device Name/Model** | **Type** |
| Philips Trilogy 100 Ventilator | Continuous Ventilator |
| Philips Trilogy 200 Ventilator | Continuous Ventilator |
| Philips Garbin Plus, Aeris, LifeVent Ventilator | Continuous Ventilator |
| Philips A-Series BiPAP Hybrid A30 | Continuous Ventilator, Minimum Ventilatory Support, Facility Use |
| Philips A-Series BiPAP V30 Auto Ventilator | Continuous Ventilator, Minimum Ventilatory Support, Facility Use |
| Philips A-Series BiPAP A40 | Continuous Ventilator, Non-life Supporting |

---

[6] *Medical Device recall notification (U.S. only) / field safety notice (International Markets)*, PHILIPS RESPIRONICS (June 14, 2021), https://www.usa.philips.com/healthcare/e/sleep/communications/src-update#section_2 (accessed June 16, 2021).

[7] *Id.*

| Philips A-Series BiPAP A30 | Continuous Ventilator, Non-life Supporting |
|---|---|

27.     According to Philips, the PE-PUR Foam used in Recalled Devices puts Recalled Device users at risk of suffering from the following: "Irritation (skin, eye, and respiratory tract), inflammatory response, headache, asthma, adverse effects to other organs (e.g. kidneys and liver) and toxic carcinogenic affects."[8] Philips further noted that it had received specific complaints from Recalled Devices users as suffering from "headache[s], upper airway irritation, cough, chest pressure and sinus infection."[9]

## V.     The Health Risks Associated with Use of the Recalled Devices Renders Them Worthless

28.     As a result of the health risks associated with the use of the Recalled Devices, together with Defendants' concealment of these risks from the date they were first reported through April 26, 2021, the Recalled Devices have been rendered completely worthless or, at the very least, have been substantially diminished in value.

29.     The information described above, including the now-known health risks, the recall, and the medical advice issued by Philips, have rendered the Recalled Device worthless to patients with sleep and respiratory conditions. Individuals not using life-supporting ventilators must discontinue their user of the Recalled Devices or face health risks as grave as cancer. If they choose to discontinue use they must pay for another expensive device in order to receive effective treatment. Individuals using life-supporting ventilators must seek out an alternative before discontinuing their use of the Recalled Devices.

---

[8] *Id.*

[9] *Id.*

30.    Recognizing this, Philips issued the following advice to patients using any of the

Recalled Devices:

- "**For patients using BiLevel PAP and CPAP devices**: Discontinue use of affected units and consult with physicians to determine the benefits of continuing therapy and potential risks."[10]

- "**For patients using life-sustaining mechanical ventilator devices: <u>DO NOT discontinue or alter prescribed therapy</u>, without consulting physicians to determine appropriate next steps.**"[11]

31.    As a result of the above, Plaintiffs and the Class will have to undertake

considerable expense replacing the Recalled Devices.

**VI.    <u>Philips Unreasonably Delayed its Recall</u>**

32.    Philips has not disclosed when it first received reports from users of its Sleep &

Respiratory Care devices "regarding the presence of black debris/particles within the airpath

circuit (extending from the device outlet, humidifier, tubing, and mask)."[12] However, given the

fact that all Philips Respironics devices manufactured from 2009 to present have been recalled, it

is unlikely that Defendants only recently learned of these issues.

33.    Thus, as a result of user reports, Defendants were aware of the degradation of the

PE-PUR sound abatement foam used in the Recalled Devices, yet continued to manufacture and

sell the Recalled Devices with such awareness for a significant period of time. During this

period, Defendants unreasonably and unjustly profited from the manufacture and sale of the

---

[10] *Id.* (emphasis in original).

[11] *Id.* (emphasis in original).

[12] *Medical Device recall notification (U.S. only) / field safety notice (International Markets)*, PHILIPS RESPIRONICS https://www.usa.philips.com/healthcare/e/sleep/communications/src-update#section_2 (accessed June 16, 2021).

Recalled Devices and unreasonably put users of the Recalled Devices at risk of development adverse health effects, including cancer.

34.     In fact, it was only after the early April 2021 release of the Philips Respironics DreamStation 2, a breathing device which does not contain the dangerous PE-PUR Foam, that Philips publicly admitted the problems with the Recalled Devices in a regulatory filing. As detailed above, it was not for another seven weeks that Philips officially recalled the Recalled Devices.

**VII.    Philips' Recall Provides No Relief to Class Members**

35.     As part of its announcement of the recall on June 14, 2021, Philips announced that it would be implementing "a comprehensive repair and replacement program for the affected devices" as follows:

**Repair and replacement program**

Philips is providing the relevant regulatory agencies with required information related to the launch and implementation of the projected correction. The company will replace the current sound abatement foam with a new material and has already begun the preparations, which include obtaining the relevant regulatory clearances. Philips aims to address all affected devices in scope of this correction as expeditiously as possible.

As part of the program, the first-generation DreamStation product families will be modified with a different sound abatement foam and shipped upon receipt of the required regulatory clearances. Philips' recently launched next-generation CPAP platform, DreamStation 2, is not affected by the issue. To support the program, Philips is increasing the production of its DreamStation 2 CPAP devices, that are available in the US and selected countries in Europe.[13]

36.     As the above language makes clear, Philips does not intend to replace the Recalled Devices with its newly manufactured DreamStation 2 device that is not affected by the recall (although individuals can purchase a new Philips DreamStation 2 on their own), but

---

[13] *Id.*

instead intends to switch out the dangerous PE-PUR foam in each Recalled Device. This is a time-consuming process that will leave Recalled Device users without use of their devices for untold periods of time.

37.     As implemented to date, the "repair and replacement" program has not repaired or replaced a single Recalled Device. Recalled Device users seeking to have their devices repaired or replaced are asked to register their devices on the Philips website, but are provided only with a registration number and no information as to when they can expect their Recalled Devices to be repaired. Upon information and belief, Philips has not provided *any* guidance to *anyone* as to when Recalled Devices will be repaired.

**VIII.   Plaintiff Prinna Boudreau**

38.     Plaintiff Prinna Boudreau is a resident of Hennepin County, Minnesota.

39.     Plaintiff Boudreau acquired and began using one of the Recalled Devices, a Philips Respironics DreamStation Auto CPAP, model DSX500H11, in or around December 2020. Prior to December 2020, and since at least early 2012, Plaintiff Boudreau used a different Philips CPAP device.

40.     Plaintiff Boudreau used her DreamStation Auto CPAP device regularly to treat a health condition until learning that the device was one of the Recalled Devices on or about June 14, 2021.

41.     As a result of the health risks associated with continued use of his device and the recall, Plaintiff Boudreau's DreamStation Auto CPAP device is now worthless and Plaintiff Boudreau will be forced to replace the device at considerable cost.

### IX.    **Plaintiff Mary Campbell**

42.    Plaintiff Mary Campbell is a resident of Calaveras County, California.

43.    Plaintiff Campbell acquired and began using one of the Recalled Devices, a Philips Respironics DreamStation CPAP device, in August 2018.

44.    Plaintiff Campbell used her Philips Respironics DreamStation CPAP device regularly to treat a health condition until learning that the device.

45.    Because of the ineffectiveness of Philips' recall notification methods, Plaintiff Campbell learned that her Philips Respironics DreamStation CPAP device was one of the Recalled Devices from an article in the New York Post.

46.    As a result of the health risks associated with continued use of her device and the recall, Plaintiff Campbell's Philips Respironics DreamStation CPAP device is now worthless and Plaintiff Campbell will be forced to replace the device at considerable cost.

### X.    **Plaintiff Ricardo Campos**

47.    Plaintiff Ricardo Campos is a resident of Tulane County, California.

48.    Plaintiff Campos acquired and began using one of the Recalled Devices, a Philips Respironics DreamStation, in 2018.

49.    Plaintiff Campos used his Philips Respironics DreamStation regularly to treat a health condition until learning that the device was one of the Recalled Devices on or after June 14, 2021.

50.    As a result of the health risks associated with continued use of his device and the recall, Plaintiff Campos' Philips Respironics DreamStation device is now worthless and Plaintiff Campos will be forced to replace the device at considerable cost.

## XI.    Plaintiff Jeff Eck-London

51.     Plaintiff Jeff Eck-London is a resident of Erie County, New York.

52.     Plaintiff Eck-London acquired and began using one of the Recalled Devices, a Philips Respironics DreamStation CPAP device, in or around 2017.

53.     Plaintiff Eck-London used his Philips Respironics DreamStation regularly to treat a health condition until learning that the device was one of the Recalled Devices on or after June 14, 2021.

54.     As a result of the health risks associated with continued use of his device and the recall, Plaintiff Eck-London's Philips Respironics DreamStation device is now worthless and Plaintiff Eck-London will be forced to replace the device at considerable cost.

## XII.    Plaintiff Nora Freeman

55.     Plaintiff Nora Freeman is a resident of Westchester County, New York.

56.     Plaintiff Freeman acquired and used one of the Recalled Devices, a Philips Respironics DreamStation device for several years to treat a health condition until learning that the device was one of the Recalled Devices on or after June 14, 2021.

57.     As a result of the health risks associated with continued use of her device and the recall, Plaintiff Freeman's Philips Respironics DreamStation device is now worthless and Plaintiff Freeman will be forced to replace the device at considerable cost.

## XIII.    Plaintiff Stephen Grice

58.     Plaintiff Stephen Grice is a resident of Seminole County, Florida.

59.     Plaintiff Grice acquired and began using one of the Recalled Devices, a Philips Respironics DreamStation CPAP device, in July 2019.

60.     Plaintiff Grice used his Philips Respironics DreamStation CPAP device regularly to treat a health condition until learning that the device was one of the Recalled Devices on or after June 14, 2021.

61.     As a result of the health risks associated with continued use of his device and the recall, Plaintiff Grice's Philips Respironics DreamStation CPAP device is now worthless and Plaintiff Grice will be forced to replace the device at considerable cost.

### XIV.   **Plaintiff Beth Rodgers**

62.     Plaintiff Beth Rodgers is a resident of Chesterfield County, Virginia.

63.     Plaintiff Rogers acquired and began using one of the Recalled Devices, a Philips Respironics DreamStation CPAP device in 2019. Prior to that, Plaintiff Rodgers owned and used another one of the Recalled Devices,  a Philips Respironics SystemOne CPAP device.

64.      Plaintiff Rodgers used her Philips Respironics DreamStation device regularly to treat a health condition until learning that the device was one of the Recalled Devices.

65.     As a result of the health risks associated with continued use of her devices and the recall, Plaintiff Rodgers' Philips Respironics DreamStation CPAP device and Philips Respironics SystemOne CPAP device are now worthless and Plaintiff Rodgers has been forced to replace the device at considerable cost.

### XV.   **Plaintiff Matthew Smith**

66.     Plaintiff Matthew Smith is a resident of Pike County, Pennsylvania.

67.     Plaintiff Smith acquired and began using one of the Recalled Devices, a Philips Respironics DreamStation CPAP device in 2017.

68.     Plaintiff Smith used his Philips Respironics DreamStation device regularly to treat a health condition until learning that the device was one of the Recalled Devices.

69.     On June 22, 2021, before acquiring knowledge of the Recall, Plaintiff Smith

purchased parts for his Philips Respironics DreamStation CPAP device for approximately $467.

70.     Due to the ineffectiveness of Philip's methods of notifying members of the Class

and Subclasses of the Recall, Plaintiff Smith did not acquire notice of the Recall until after June

22, 2021.

71.     As a result of the health risks associated with continued use of his device and the

recall, Plaintiff Smith's Philips Respironics DreamStation CPAP device and parts are now

worthless and Plaintiff Smith will be forced to replace the device at considerable cost.

## TOLLING AND ESTOPPEL

## I.     DISCOVERY RULE TOLLING

72.     Plaintiffs, the Class, and Subclasses had no way of knowing about Philips'

conduct with respect to the health risks associated with the use of the Recalled Devices.

73.     Neither Plaintiffs nor any other members of the Class or Subclasses, through the

exercise of reasonable care, could have discovered the conduct by Philips alleged herein. Further,

Plaintiffs and members of the Class and Subclasses did not discover and did not know of facts

that would have caused a reasonable person to suspect that Philips was engaged in the conduct

alleged herein.

74.     For these, reasons, all applicable statutes of limitation have been tolled by the

discovery rule with respect to claims asserted by Plaintiffs, the Class, and the Subclasses.

## II.     FRAUDULENT CONCEALMENT TOLLING

75.     By failing to provide immediate notice of the adverse health effects associated

with continued use of the Recalled Devices, Philips concealed its conduct and the existence of

the claims asserted herein from Plaintiffs and the members of the Class and Subclasses.

76.     Upon information and belief, Philips intended its acts to conceal the facts and claims from Plaintiffs and members of the Classes and Subclasses. Plaintiffs and the members of the Class and Subclasses were unaware of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered Defendants' conduct. For this reason, any statute of limitations that otherwise may apply to the claims of Plaintiffs or members of the Classes or Subclasses should be tolled.

## CLASS ACTION ALLEGATIONS

77.     Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3).

78.     Plaintiffs seek class certification on behalf of a class defined as follows (the "Class"):

**NATIONWIDE CLASS:** all persons in the United States who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Class").

79.     Plaintiffs seek certification on behalf of a subclass defined as follows:

**CALIFORNIA SUBCLASS:** all persons who were or are citizens of the State of California who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "California Subclass").

80.     Plaintiffs seek certification on behalf of a subclass defined as follows:

**FLORIDA SUBCLASS:** all persons who were or are citizens of the State of Florida who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Florida Subclass").

81.     Plaintiffs seek certification on behalf of a subclass defined as follows:

**MASSACHUSETTS SUBCLASS:** all persons who were or are citizens of the Commonwealth of Massachusetts who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Massachusetts Subclass").

17

82.     Plaintiffs seek certification on behalf of a subclass defined as follows:

**MINNESOTA SUBCLASS:** all persons who were or are citizens of the State of Minnesota who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Minnesota Subclass").

83.     Plaintiffs seek certification on behalf of a subclass defined as follows:

**NEW YORK SUBCLASS**: all persons who were or are citizens of the State of New York who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "New York Subclass").

84.     Plaintiffs seek certification on behalf of a subclass defined as follows:

**PENNSYLVANIA SUBCLASS:** all persons who were or are citizens of the Commonwealth of Pennsylvania who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Pennsylvania Subclass").

85.     Plaintiffs seek certification on behalf of a subclass defined as follows:

**VIRGINIA SUBCLASS:** all persons who were or are citizens of the Commonwealth of Virginia who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Virginia Subclass").

86.     Plaintiffs reserve the right to modify or refine the definitions of the Class or Subclasses based upon discovery of new information and in order to accommodate any of the Court's manageability concerns.

87.     Excluded from the Class and Subclasses are: (a) any Judge or Magistrate Judge presiding over this action and members of their staff, as well as members of their families; (b) Defendants' and Defendants' predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which any Defendants or their parents have a controlling interest, as well as Defendants' current or former employees, agents, officers, and directors; (c) persons who properly execute and file a timely request for exclusion from the Classes or Subclass; (d) persons

whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) counsel for Plaintiffs  and Defendants; and (f) the legal representatives, successors, and assigns of any such excluded persons.

88.     **Ascertainability**. The proposed Classes and Subclasses are readily ascertainable because they are defined using objective criteria so as to allow class members to determine if they are part of a Class or Subclass. Further, the Classes and Subclasses can be readily identified through records maintained by Defendants.

89.     **Numerosity (Rule 23(a)(1)).** The Classes and Subclasses are so numerous that joinder of individual members herein is impracticable. The exact number of members of the Class and Subclasses, as herein identified and described, is not known, but sales figures indicate that millions of individuals have purchased the Philips Recalled Devices.

90.     **Commonality (Rule 23(a)(2))**. Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class and Subclass members, including the following:

- whether Defendants owed a duty of care to Plaintiffs and the Classes;

- whether Defendants knew or should have known that the PE-PUR Foam used for sound abatement posed health risks;

- whether Defendants wrongfully represented that the PE-PUR Foam used for sound abatement in the Recalled Devices was safe;

- whether the Recalled Devices retained any value post-recall;

- whether Defendants wrongfully represented that the Recalled Devices were safe to use;

- whether Defendants wrongfully failed to disclose that the PE-PUR Foam used for sound abatement in the Recalled Devices posed health risks to Recalled Device users;

- whether Defendants' representations in advertising, warranties, packaging, and/or labeling were false, deceptive, and misleading;

- whether those representations were likely to deceive a reasonable consumer;

- whether a reasonable consumer would consider the presence, or risk of, health risks as a material fact in purchasing one of the Recalled Devices;

- whether Defendants had knowledge that those representations were false, deceptive, and misleading;

- whether Defendants breached their express warranties;

- whether Defendants breached their implied warranties;

- whether Defendants engaged in unfair trade practices;

- whether Defendants engaged in false advertising;

- whether Defendants' conduct was negligent per se;

- whether Defendants made negligent and/or fraudulent misrepresentations and/or omissions;

-  whether Plaintiffs and the members of the Class and Subclasses are entitled to actual, statutory, and punitive damages; and

- whether Plaintiffs and members of the Class and Subclasses are entitled to declaratory and injunctive relief.

91.   **Typicality (Rule 23(a)(3)).** Plaintiffs' claims are typical of the claims of the other members of the proposed Class and Subclasses. Plaintiffs and members of the Class and

Subclasses (as applicable) suffered injuries as a result of Philips' wrongful conduct that is uniform across the Class and Subclasses.

92.     **Adequacy (Rule 23(a)(4)).** Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the Class and Subclasses. Plaintiffs have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interest that is antagonistic to those of the Class and Subclasses, and Defendants have no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and Subclasses, and they have the resources to do so. Neither Plaintiffs nor Plaintiffs' counsel have any interest adverse to those of the other members of the Class and Subclasses.

93.     **Substantial Benefits**. This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class and Subclasses is impracticable. The prosecution of separate actions by individual members of the Class and Subclasses would impose heavy burdens upon the Courts and Defendants, would create a risk of inconsistent or varying adjudications of the questions of law and fact common to members of the Classes and Subclasses, and would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

94.     Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual members of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

95.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Classes and Subclasses, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class and Subclasses as a whole. Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### BREACH OF EXPRESS WARRANTY

**(on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

96.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

97.     Philips marketed and sold the Recalled Devices into the stream of commerce with the intent that the Recalled Devices would be purchased by Plaintiffs and the Class and State Subclasses.

98.     Philips expressly warranted, advertised, and represented to Plaintiffs and the Class and State Subclasses that the Recalled Devices were safe and appropriate for human use.

99.     Philips made these express warranties regarding the Recalled Devices quality and fitness for use in writing through its website, advertisements, and marketing materials and on the Recalled Devices' packaging and labels. These express warranties became part of the basis of the

bargain that Plaintiffs and the Class and State Subclasses entered into upon purchasing the Recalled Devices.

100.    Philips' advertisements, warranties, and representations were made in connection with the sale of the Recalled Devices to Plaintiffs and the Class and State Subclasses. Plaintiffs and the Class and State Subclasses relied on Philips' advertisements, warranties, and representations regarding the Recalled Devices in deciding whether to purchase Philips' products.

101.    Philips' Recalled Devices do not conform to Philips' advertisements, warranties and representations in that they are not safe, healthy, and appropriate for human use.

102.    Philips therefore breached its express warranties by placing Recalled Devices into the stream of commerce and selling them to consumers, when their use had dangerous effects and was unsafe, rendering these products unfit for their intended use and purpose, and unsafe and unsuitable for consumer use as marketed by Philips. These associated health effects substantially impair the use, value, safety of Recalled Devices.

103.    Philips was aware, or should have been aware, of the toxic or dangerous health effects of the use of the Recalled Devices, but nowhere on the package labeling or on Philips' websites or other marketing materials did Philips warn Plaintiffs and members of the Class and State Subclasses that they were at risk of developing health problems as a result of the dangerous PE-PUR Foam used in the Recalled Devices.

104.    Instead, Philips concealed the dangerous health effects of the PE-PUR Foam used in the Recalled Devices and deceptively represented that these products were safe, healthy, and appropriate for use. Philips thus utterly failed to ensure that the material representations it was making to consumers were true.

105.    The adverse health effects associated with use of the Recalled Devices existed when they left Philips' possession or control and were sold to Plaintiffs and members of the Class and State Subclasses. The dangers associated with use of the Recalled Devices were undiscoverable by Plaintiffs and members of the Class and State Subclasses at the time of purchase of the Recalled Devices.

106.    As manufacturers, marketers, advertisers, distributors and sellers of Recalled Devices, Philips had exclusive knowledge and notice of the fact that the Recalled Devices did not conform to the affirmations of fact and promises.

107.    In addition, or in the alternative, to the formation of an express contract, Philips made each of the above-described representations to induce Plaintiffs and members of the Class and State Subclasses to rely on such representations.

108.    Philips' affirmations of fact and promises were material, and Plaintiffs and members of the Class and State Subclasses reasonably relied upon such representations in purchasing the Recalled Devices.

109.    All conditions precedent to Philips' liability for its breach of express warranty have been performed by Plaintiffs or members of the Class or State Subclasses.

110.    Affording Philips an opportunity to cure its breaches of written warranties would be unnecessary and futile here. Philips was placed on reasonable notice that the PE-PUR Foam in the Recalled Devices was unsafe from user reports. Philips had ample opportunity either to stop using the PE-PUR Foam or to replace the PE-PUR Foam in the Recalled Devices to make them safe and healthy for use by Plaintiffs and members of the Class and State Subclasses, but failed to do so until now.

111.    As a direct and proximate result of Philips' breaches of express warranty, Plaintiffs and members of the Class and State Subclasses have been damaged because they did not receive the products as specifically warranted by Philips. Plaintiffs and members of the Class and State Subclasses did not receive the benefit of the bargain and suffered damages at the point of sale stemming from their overpayment for the Recalled Devices.

112.    Plaintiffs and the Class and State Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Philips' failure to deliver goods conforming to their express warranties and resulting breach.

<u>**SECOND CLAIM FOR RELIEF**</u>

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

**(on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

113.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

114.    Philips are merchants engaging in the sale of goods to Plaintiffs and the Class and State Subclasses.

115.    There was a sale of goods from Philips to Plaintiffs and the Class and State Subclasses.

116.    At all times mentioned herein, Philips manufactured or supplied Recalled Devices, and prior to the time the Recalled Devices were purchased by Plaintiffs and the Class and State Subclasses, Philips impliedly warranted to them that the Recalled Devices were of merchantable quality, fit for their ordinary use, and conformed to the promises and affirmations of fact made on the Recalled Devices' labels and packaging, including that the Recalled Devices were safe and appropriate for human use. Plaintiffs and the Class and State Subclasses relied on Philips' promises and affirmations of fact when they purchased the Recalled Devices.

117.    Contrary to these representations and warranties, the Recalled Devices were not fit for their ordinary use, and did not conform to Philips' affirmations of fact and promises as use of the Recalled Devices was accompanied by the risk of adverse health effects that do not conform to the packaging.

118.    Philips breached its implied warranties by selling Recalled Devices that failed to conform to the promises or affirmations of fact made on the packaging or label as use of each Recalled Devices was accompanied by the risk of developing adverse health effects that do not conform to the packaging.

119.    Philips was on notice of this breach, as it was made aware of the adverse health effects accompanying use of the Recalled Devices through user reports submitted to Philips.

120.    Privity exists because Philips impliedly warranted to Plaintiffs and the Class through the warranting, packaging, advertising, marketing, and labeling that Recalled Devices were natural, and suitable for use to treat health conditions by individuals, and made no mention of the attendant health risks associated with use of the Recalled Devices.

121.    As a direct and proximate result of Philips' conduct, Plaintiffs and the Class and State Subclasses have suffered actual damages in that each Recalled Device they purchased is worth less than the price they paid and that they would not have purchased at all had they known of the attendant health risks associated with the use of each Recalled Device.

122.    Plaintiffs and the Class and State Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Philips' failure to deliver goods conforming to their implied warranties and resulting breach.

## THIRD CLAIM FOR RELIEF

## FRAUDULENT MISREPRESENTATION

### (on behalf of the Nationwide Class or, alternatively, the State Subclasses)

123.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

124.    Philips falsely represented to Plaintiffs and the Class and State Subclasses that the Recalled Devices were safe for human use.

125.    Philips intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiffs and the Class and State Subclasses to purchase Recalled Devices.

126.    Philips knew that its representations about the Recalled Devices were false in that the Recalled Devices contained PE-PUR Foam and were thus at risk of cause adverse health effects to users of the Recalled Devices which does not conform to the products' labels, packaging, advertising, and statements. Philips knowingly allowed its packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiffs and the Class and State Subclasses.

127.    Plaintiffs and the Class and State Subclasses did in fact rely on these misrepresentations and purchased Recalled Devices detriment. Given the deceptive manner in which Philips advertised, represented, and otherwise promoted the Recalled Devices, Plaintiff's and the Class' and State Subclasses' reliance on Philips' misrepresentations was justifiable.

128.    As a direct and proximate result of Philips' conduct, Plaintiffs and the Class and State Subclasses have suffered actual damages in that they purchased Recalled Devices that were worth less than the price they paid and that they would not have purchased at all had they known of the health risks, including cancer, associated with the use of the Recalled Devices that do not conform to the Recalled Devices' labels, packaging, advertising, and statements.

129.     Plaintiffs and the Class and State Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## FOURTH CLAIM FOR RELIEF

### FRAUD BY OMISSION

**(on behalf of Nationwide Class or, alternatively, the State Subclasses)**

130.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

131.     Philips concealed from and failed to disclose to Plaintiffs and the Class and State Subclasses that use of Recalled Devices is accompanied by a risk of adverse health effects that does not conform to the products' labels, packaging, advertising, and statements.

132.     Philips was under a duty to disclose to Plaintiffs and the Class and State Subclasses the true safety, quality, characteristics, fitness for use, and suitability of the Recalled Devices because: (1) Philips was in a superior position to know the true state of facts about its products; (2) Philips was in a superior position to know the risks associated with the use of, characteristics of, and suitability of Recalled Devices for use by individuals; and (3) Philips knew that Plaintiffs and the Class and State Subclasses could not reasonably have been expected to learn or discover that Recalled Devices were misrepresented in the packaging, labels, advertising, and websites prior to purchasing Recalled Devices.

133.     The facts concealed or not disclosed by Philips to Plaintiffs and the Class and State Subclasses were material in that a reasonable consumer would have considered them important when deciding whether to purchase Recalled Devices.

134.     Plaintiffs and the Class and State Subclasses justifiably relied on the Philips' omissions to their detriment. The detriment is evident from the true quality, characteristics, and

risk associated with the use of Recalled Devices, which is inferior when compared to how Recalled Devices are advertised and represented by Philips.

135.   As a direct and proximate result of Philips' conduct, Plaintiffs and the Class and State Subclasses have suffered actual damages in that they purchased Recalled Devices that were worth less than the price they paid and that they would not have purchased at all had they known of the health risks associated with the use of the Recalled Devices which do not conform to the Recalled Devices' labels, packaging, advertising, and statements.

136.   Plaintiffs and the Class and State Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## FIFTH CLAIM FOR RELIEF

### NEGLIGENT MISREPRESENTATION

**(on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

137.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

138.   Philips had a duty to Plaintiffs and the Class and State Subclasses to exercise reasonable and ordinary care in the developing, testing, manufacture, marketing, distribution, and sale of Recalled Devices.

139.   Philips breached its duty to Plaintiffs and the Class by developing, testing, manufacturing, advertising, marketing, distributing, and selling products to Plaintiffs and the Class that did not have the qualities, characteristics, and suitability for use as advertised by Philips and by failing to promptly remove Recalled Devices from the marketplace or to take other appropriate remedial action upon becoming aware of the health risks of the Recalled Devices.

140.    Philips knew or should have known that the qualities and characteristics of the Recalled Devices were not as advertised or suitable for their intended use and were otherwise not as warranted and represented by Philips. Specifically, Philips knew or should have known that: (1) the use of Recalled Devices was accompanied by risk of adverse health effects do not conform to the packaging and labeling; (3) the Recalled Devices were adulterated, or at risk of being adulterated, by the PE-PUR Foam; and (4) the Recalled Devices were otherwise not as warranted and represented by Philips.

141.    As a direct and proximate result of Philips' conduct, Plaintiffs and the Class and State Subclasses have suffered actual damages in that they purchased Recalled Devices that were worth less than the price they paid and that they would not have purchased at all had they known they contained, PE-PUR Foam that could cause users of the Recalled Devices to suffer adverse health effects that do not conform to the products' labels, packaging, advertising, and statements.

142.    Plaintiffs and the Class and State Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## SIXTH CLAIM FOR RELIEF

### UNJUST ENRICHMENT

**(on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

143.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

144.    Plaintiffs and the Class and State Subclasses conferred substantial benefits on Philips through their purchase of Recalled Devices. Philips knowingly and willingly accepted and enjoyed these benefits.

145.    Philips either knew or should have known that the payments rendered by Plaintiffs and the Class and State Subclasses were given with the expectation that the Recalled

Devices would have the qualities, characteristics, and suitability for use represented and warranted by Philips. As such, it would be inequitable for Philips to retain the benefit of the payments under these circumstances.

146.    Philips' acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Philips to retain the benefits without payment of the value to Plaintiffs and the Class and State Subclasses.

147.    Plaintiffs and the Class and State Subclasses are entitled to recover from Philips all amounts wrongfully collected and improperly retained by Philips, plus interest thereon.

148.    Plaintiffs and the Class and State Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## SEVENTH CLAIM FOR RELIEF

### CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT

### Cal. Civ. Code §§ 1750 *et seq*.

### (on behalf of Plaintiff Campbell, Plaintiff Campos, and the California Subclass)

149.    Plaintiffs incorporate the forgoing allegations as if fully set forth herein.

150.    Plaintiffs have provided Defendants, via certified mail, return receipt requested, notice of the specific complaint and damages in accordance with Cal. Civ. Code § 1761. Subject to the response, if any, by Defendants within 30 days of the notice, Plaintiffs, on behalf of themselves and the Classes, shall amend the Complaint to include this Claim for Relief and demand all appropriate relief under the CLRA.

151.    Plaintiffs and each proposed Class member are "consumer[s]" as that term is defined in Cal. Civ. Code § 1761(d).

152.    The Recalled Devices are "goods," as that term is defined in Cal. Civ. Code §
1761(a).

153.    Each Defendant is a "person" as that term is defined in Cal. Civ. Code § 1761(c).

154.    Plaintiffs' and each proposed Class member's purchase of Defendants' products
constituted a "transaction" as that term is defined in Cal. Civ. Code § 1761(e).

155.    Philips' conduct alleged herein violates the following provisions of California's
Consumer Legal Remedies Act (the "CLRA"):

(a) Cal. Civ. Code § 1770(a)(5), by negligently, recklessly, and/or
intentionally representing that the Recalled Devices were and are safe for
use by individuals when in fact they contain an unsafe material, PE-PUR
Foam, which could cause a Recalled Device user to suffer adverse health
effects from use of the Recalled Devices.

(b) Cal. Civ. Code § 1770(a)(7), by negligently, recklessly, and/or
intentionally representing that the Recalled Devices were of a particular
standard, quality, or grade, when they were of another;

(c) Cal. Civ. Code § 1770(a)(9), by negligently, recklessly, and/or
intentionally advertising the Recalled Devices with intent not to sell them
as advertised; and

(d) Cal. Civ. Code § 1770(a)(16), by representing that the Recalled Devices
have been supplied in accordance with previous representations when they
have not.

156.    As a direct and proximate result of these violations, Plaintiffs and the Class have been harmed by the misleading marketing described herein in any manner in connection with the advertising and sale of the Recalled Devices.

157.    Plaintiffs and Members of the Class seek relief for the injuries they have suffered as a result of Philips' practices, as provided by the CLRA and applicable law.

### EIGHTH CLAIM FOR RELIEF

### CALIFORNIA'S FALSE ADVERTISING LAW

### Cal. Bus. & Prof. Code §§ 17500 *et seq.*

### (on behalf of Plaintiff Campbell, Plaintiff Campos, and the California Subclass)

158.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

159.    California's False Advertising Law prohibits any statement in connection with the sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code §17500.

160.    As set forth herein, Philips' claims that the Recalled Devices were and are safe for use by individuals were false because the Recalled Devices in fact they contain an unsafe material, PE-PUR Foam, which could cause a Recalled Device user to suffer adverse health effects from use of the Recalled Devices, and were likely to deceive the public.

161.    Philips' claims that the Recalled Devices were and are safe for use by individuals were and are untrue and misleading because they failed to mention the presence of an unsafe material, PE-PUR Foam, which could cause a Recalled Device user to suffer adverse health effects from use of the Recalled Devices.

162.    Philips knew, or reasonably should have known, that all these claims were untrue or misleading.

163.    Prospective injunctive relief is necessary given Philips' refusal to offer details as to when they intend to repair the Recalled Devices.

164.    Plaintiffs and members of the Class are entitled to injunctive and equitable relief, and restitution in the amount they spent on the Recalled Devices and replacement devices.

## NINTH CLAIM FOR RELIEF

### CALIFORNIA'S UNFAIR COMPETITION LAW

### Cal. Bus. & Prof. Code §§ 17200 *et seq.*

### (on behalf of Plaintiff Campbell, Plaintiff Campos, and the California Subclass)

165.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

166.    The Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code §17200.

167.    Defendants fraudulently represented that the Recalled Devices were and are safe for use by individuals when in fact they contain an unsafe material, PE-PUR Foam, which could cause a Recalled Device user to suffer adverse health effects from use of the Recalled Devices.

168.    As alleged herein, Philips unlawfully advertised the Recalled Devices using false or misleading claims, such that Philips' actions as alleged herein violate at least the following laws:

(a) The CLRA, Cal. Bus. & Prof. Code § 1750 et seq.; and

(b) The False Advertising Law, California Business & Professions Code §§ 17500, et seq.

169.    Philips' conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Recalled Devices is unfair because Defendant's conduct was immoral, unethical,

unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

170.    Philips' conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Recalled Devices is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to, the False Advertising Law and the CLRA.

171.    Philips' conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Recalled Devices is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one that consumers, themselves, can reasonably avoid.

172.    In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiffs seek an order requiring Philips to immediately repair or replace the Recalled Devices.

173.    On behalf of herself and the Class, Plaintiffs also seek an order for the restitution of all monies from the sale of the Recalled Devices, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

## TENTH CLAIM FOR RELIEF

### FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

### Fla. Stat. §§ 501.201 *et seq.*

### (on behalf of Plaintiff Grice and the Florida Subclass)

174.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

175.    Plaintiff Grice and the Florida Subclass Members are "consumers," as defined by Fla. Stat. § 501.203(7), the products sold by Philips are "goods" within the meaning of FDUTPA, and the transactions at issue constitute "trade or commerce" as defined by FDUTPA.

176.     The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §

501.204. provides that "[u]nfair methods of competition, unconscionable acts or practices, and

unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared

unlawful."

177.     For the reasons discussed herein, Philips violated and continues to violate

FDUTPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices

proscribed by Fla. Stat. § 501.201, et seq. Philips' acts and practices, including its material

omissions, described herein, were likely to, and did in fact, deceive and mislead members of the

public, including consumers acting reasonably under the circumstances, to their detriment.

178.     At all times mentioned herein, Philips engaged in trade or commerce in Florida,

as defined by Fla. Stat. § 501.203(8), in that they advertised, offered for sale, sold or distributed

goods or services in Florida and/or engaged in trade or commerce directly or indirectly affecting

the people of Florida.

179.     Philips repeatedly advertised, both on the labels for the Recalled Devices, on its

websites, and through a national advertising campaigns, among other items, that the Recalled

Devices were and are safe for use by individuals when in fact they contain an unsafe material,

PE-PUR Foam, which could cause a Recalled Device user to suffer adverse health effects from

use of the Recalled Devices.

180.     Philips' representations and omissions were material because they were likely to

deceive reasonable consumers to induce them to the Recalled Devices without being aware that

the Recalled Devices contained an unsafe material that could cause adverse health effects. As a

direct and proximate result of Philips' unfair and deceptive acts or practices, Plaintiff Grice and

Florida Subclass Members suffered damages by purchasing the Recalled Devices because they

would not have purchased the Recalled Devices had they known the truth, and they received a product that was worthless because it contains unsafe PE-PUR Foam.

181.    Philips' deceptive trade practices caused injury in fact and actual damages to Plaintiff Grice and Florida Subclass Members in the form of the loss or diminishment of value of the Recalled Devices, which allowed Defendant to profit at the expense of Plaintiff Grice and Florida Subclass Members. The injuries Plaintiff Grice and Florida Subclass Members were to legally protected interests. The gravity of the harm of Philips' actions is significant and there is no corresponding benefit to consumers of such conduct.

182.    Plaintiff Grice and the Florida Subclass Members seek relief for the injuries they have suffered as a result of Philips' unfair and deceptive acts and practices, as provided by Fla. Stat. § 501.211 and applicable law.

## ELEVENTH CLAIM FOR RELIEF

### MASSACHUSETTS CONSUMER PROTECTION ACT

### Mass. Gen. Laws ch. 93, §§ 1 *et seq.*

### (on behalf of the Nationwide Class, or alternatively, the Massachusetts Subclass)

183.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

184.    Plaintiffs intend to assert and prosecute claims under the under the Massachusetts Consumer Protection Law, M.G.L.A. ch. 93A § 1 et seq. ("MCPL") against Defendants. Defendant Philips NA's principal place of business is located in Cambridge, Massachusetts. This Count provides notice that this Complaint shall be amended to demand all appropriate relief once Plaintiffs have provided notice in accordance with M.G.L. ch. 93A § 9(3) to Defendant Philips NA and the statutory period for a response has passed, subject to any response by Defendant Philips NA.

185.    Each Defendant is a "person" as defined by M.G.L.A. 93A § 1(a).

186.    Plaintiffs, members of the Class, and members of the Massachusetts Subclass are actual or potential consumers of Recalled Devices.

187.    Philips engaged in engaged in deceptive or unfair acts or practices in the in the conduct of any trade or commerce, in violation of M.G.L. 93A § 2(a), including but not limited to the following:

(a)    Knowingly or recklessly made a false representation as to the characteristics and use of Recalled Devices, in violation of 93A § 2(a);

(b)    Represented that Recalled Devices are safe for use, in violation of 93A § 2(a);

(c)    Advertised Recalled Devices with an intent not to sell it as advertised, in violation of 93A § 2(a); and

(d)    Failed to disclose the material information that Recalled Devices contained unsafe PE-PUR Foam and that Recalled Device users were at risk of suffering adverse health effects, in violation of 93A § 2(a).

188.    As detailed, *infra*, Philips' deceptive trade practices significantly impacted the public, because there are millions of consumers of Recalled Devices, including Plaintiffs, members of the Class, and members of the Massachusetts Subclass.

189.    Philips' representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Recalled Devices without being aware that Recalled Devices were unsafe to use. As a direct and proximate result of Philips' unfair and deceptive acts or practices, Plaintiffs and members of the Class and the Massachusetts Subclass suffered damages by purchasing Recalled Devices because they would not have purchased

Recalled Devices had they known the truth, and they received a product that was worthless because it is unsafe to use.

190.    Philips' deceptive trade practices caused injury in fact and actual damages to Plaintiffs, members of the Class, and members of the Massachusetts Subclass in the form of the loss or diminishment of value of Recalled Devices Plaintiffs, members of the Class, and members of the Massachusetts Subclass purchased, which allowed Philips to profit at the expense of Plaintiffs, members of the Class, and members of the Massachusetts Subclass. The injuries to Plaintiffs, members of the Class, and members of the Massachusetts were to legally protected interests. The gravity of the harm of Philips' actions is significant and there is no corresponding benefit to consumers of such conduct.

191.    Plaintiffs, members of the Class, and members of the Massachusetts Subclass seek relief under 93A § 9 including, not limited to, compensatory damages, statutory damages, restitution, penalties, injunctive relief, and/or attorneys' fees and costs.

## TWELFTH CLAIM FOR RELIEF

### MINNESOTA'S UNLAWFUL TRADE PRACTICES ACT

### Minn. Stat. Ann. § 325D13, *et seq.*

### (on behalf of Plaintiff Boudreau and the Minnesota Subclass)

192.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

193.    Each Defendant is a "person" within the meaning of the Minnesota Unlawful Trade Practices ACT (MUTPA).

194.    Philips violated the MUTPA by knowingly misrepresenting the true quality and safety of the Recalled Devices by falsely claiming that the Recalled Devices are safe for use by individuals.

195.     Philips knew or should have known that the Recalled Devices were not in fact safe for human use because they contained the unsafe PE-PUR Foam which Philips knew could cause Recalled Device users to suffer adverse health effects.

196.     Philips' pattern of knowing misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff Boudreau and the Minnesota Subclass with respect to the safety of the Recalled Devices' for use by individuals.

197.     Philips intended that Plaintiff Boudreau and the Minnesota Subclass would rely on Defendant's misrepresentations, concealment, warranties, deceptions, and/or omissions regarding the safety of the Recalled Devices.

198.     Philips' conduct and omissions described herein occurred repeatedly in Philips' trade or business and were capable of deceiving a substantial portion of the consuming public.

199.     The facts concealed or not disclosed by Philips were material facts in that Plaintiff Boudreau and any reasonable consumer would have considered them in deciding whether to purchase and use the Recalled Devices. Had Plaintiff Boudreau and the Minnesota Subclass known the Recalled Devices did not have the quality advertised by Philips, they would not have purchased or used the Recalled Devices.

200.     Plaintiff Boudreau and the members of the Minnesota Subclass would not have purchased or used the Recalled Devices at all had they known of the presence of the unsafe PE-PUR Foam and the risk of suffering adverse health effects resulting from the use of the Recalled Devices that do not conform to Philips' claims.

201.     Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325D.15, Plaintiff Boudreau and the Minnesota Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees,

costs, and any other just and proper relief available thereunder for Defendant's violations of the MUTPA.

## THIRTEENTH CLAIM FOR RELIEF

### MINNESOTA'S UNIFORM DECEPTIVE TRADE PRATICES ACT

### Minn. Stat. § 325D.44, *et seq.*

### (on behalf of Plaintiff Boudreau and the Minnesota Subclass)

202.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

203.    Each Defendant is a "person" within the meaning of the Minnesota Uniform Deceptive Trade Practices Act (MUDTPA).

204.    Defendant willingly engaged in deceptive trade practices, in violation of the MUDTPA, by knowingly misrepresenting the true quality of the Recalled Devices by falsely claiming that the Recalled Devices were and are safe to use.

205.    Philips knew or should have known that the Recalled Devices were not safe to use because they contain the dangerous PE-PUR Foam which can cause adverse health effects which does not conform to the packaging claims.

206.    Philips' misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff Boudreau and the Minnesota Subclass with respect to the Recalled Devices' safety, uses, benefits, standards, quality, grade, and suitability for human use.

207.    Philips intended that Plaintiff Boudreau and the Minnesota Subclass would rely on Philips' misrepresentations, concealment, warranties, deceptions, and/or omissions regarding the Recalled Devices' safety, uses, benefits, standards, quality, grade, and suitability for human use.

208.    Philips' conduct and omissions described herein occurred repeatedly in Philips' trade or business and were capable of deceiving a substantial portion of the consuming public.

209.    The facts concealed or not disclosed by Philips were material facts in that Plaintiff Boudreau and any reasonable consumer would have considered them in deciding whether to purchase the Recalled Devices. Had Plaintiff Boudreau known the Recalled Devices did not have the quality advertised by Philips, she would not have purchased the Recalled Devices.

210.    Philips intended that Plaintiff Boudreau and the Minnesota Subclass would rely on the deception by purchasing the Recalled Devices, unaware of the undisclosed material facts. This conduct constitutes consumer fraud.

211.    As a direct and proximate result of Philips' conduct, Plaintiff Boudreau and the Minnesota Subclass have suffered actual damages in that they purchased the Recalled Devices that were worth less than the price they paid and are now worthless.

212.    Plaintiff Boudreau and the members of the Minnesota Subclass would not have purchased the Recalled Devices at all had they known of the presence of PE-PUR Foam its dangers that do not conform to the packaging.

213.    Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325D.45, Plaintiff Boudreau and the Minnesota Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Philips' violations of the MUDTPA.

## FOURTEENTH CLAIM FOR RELIEF

### MINNESOTA FALSE STATEMENT IN ADVERTISING ACT

### Minn. Stat. § 325F.67, *et seq.*

### (on behalf of Plaintiff Boudreau and the Minnesota Subclass)

214.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

215.    Plaintiff Boudreau purchased "goods," specifically one of the Recalled Devices discussed herein, and is a "person" within the meaning of the False Statement in Advertising Act (FSAA).

216.    Plaintiff Boudreau purchased one of the Recalled Devices through Philips' statements on the packaging that contained numerous material assertions representations, and statements of fact made, published, disseminated, circulated, and placed before the public by Philips that were untrue, deceptive, and misleading.

217.    By engaging in the conduct herein, Philips violated and continues to violate Minn. Stat. § 325F.67.

218.    Philips' misrepresentations, knowing omissions, and use of other sharp business practices include, by way of example, representations that the Recalled Devices are safe for human use.

219.    Philips knew or should have known that the Recalled Devices did not have the quality and safety described above because they contained PE-PUR Foam, a dangerous material which does not conform to the packaging claims.

220.    Philips' misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff Boudreau and

the Minnesota Subclass with respect to the Recalled Devices' safety, uses, benefits, standards, quality, grade, and suitability for human use.

221.    Philips' conduct and omissions described herein occurred repeatedly in Philips' trade or business and were capable of deceiving a substantial portion of the consuming public.

222.    The facts concealed or not disclosed by Philips were material facts in that Plaintiff Boudreau and any reasonable consumer would have considered them in deciding whether to purchase the Recalled Devices. Had Plaintiff Boudreau known the Recalled Devices did not have the quality advertised by Philips, she would not have purchased one of the Recalled Devices.

223.    Philips intended that Plaintiff Boudreau and the Minnesota Subclass would rely on the deception by purchasing the Recalled Devices, unaware of the undisclosed material facts. This conduct constitutes consumer fraud.

224.    Philips' unlawful conduct is continuing, with no indication that Defendant intends to cease this fraudulent course of conduct.

225.    As a direct and proximate result of Philips' conduct, Plaintiff Boudreau and the Minnesota Subclass have suffered actual damages in that they purchased the Recalled Devices that were worth less than the price they paid and are now worthless.

226.    Plaintiff Boudreau and the members of the Minnesota Subclass would not have purchased the Recalled Devices at all had they known of the presence of the non-conforming PE-PUR Foam and its attendant dangers.

227.    Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325F.67, Plaintiff Boudreau and the Minnesota Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Philips' violations of the FSAA.

## FIFTEENTH CLAIM FOR RELIEF

## MINNESOTA PREVENTION OF CONSUMER FRAUD ACT

## Minn. Stat. § 325F.69, *et seq.*

### (on behalf of Plaintiff Boudreau and the Minnesota Subclass)

228.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

229.    Plaintiff Boudreau is a resident of the State of Minnesota.

230.    Philips is a "person" within the meaning of the Minnesota Prevention of Consumer Fraud Act (MPCFA).

231.    Philips' representations with respect to the Recalled Devices were made in connection with the sale of the Recalled Devices to Plaintiff Boudreau and the Minnesota Subclass.

232.    Philips knowingly acted, used, and employed fraud, false pretenses, false promises, misrepresentations, misleading statements, and deceptive practices in connection with the sale of its Recalled Devices. Specifically, Philips falsely represented that its Recalled Devices were safe for human use.

233.    Philips knew or should have known that the Recalled Devices did not have the quality described above because they contained PE-PUR Foam, a dangerous material that does not conform to the packaging claims. Philips intended for Plaintiff Boudreau and the Minnesota Subclass to rely on and accept as true these representations in deciding whether to purchase the Recalled Devices.

234.    Philips' unfair or deceptive acts or practices were likely to deceive reasonable consumers about the Recalled Devices' safety, quality, fitness for use and, by extension, the true value of the Recalled Devices. Plaintiff Boudreau and the Minnesota Subclass relied on, and

were in fact deceived by, Philips' representations and omissions respect to the Recalled Devices'

safety, quality, and fitness for use in deciding to purchase them over competitors' Recalled

Devices.

235.    Philips unlawful conduct is continuing, with no indication that Defendant intends

to cease this fraudulent course of conduct.

236.    As a direct and proximate result of Philips' conduct, Plaintiff Boudreau and the

Minnesota Subclass have suffered actual damages in that they purchased the Recalled Devices

that were worth less than the price they paid.

237.    Plaintiff Boudreau and the members of the Minnesota Subclass would not have

purchased the Recalled Devices at all had they known of the presence of these non-conforming

PE-PUR Foam material.

238.    Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325F.69, Plaintiff Boudreau and

the Minnesota Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees,

costs, and any other just and proper relief available thereunder for Philips' violations of the

MPCFA.

**SIXTEENTH CLAIM FOR RELIEF**

**NEW YORK GENERAL BUSINESS LAW**

**N.Y. Gen. Bus. Law § 349 *et seq.***

**(on behalf of Plaintiff Eck-London, Plaintiff Freeman, and the New York Subclass)**

239.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

240.    New York General Business Law ("GBL") § 349 declares unlawful "[d]eceptive

acts or practices in the conduct of any business, trade or commerce ... " GBL § 349(a).

241.    The practices alleged herein - namely, Defendant's use of deception, fraud, false pretenses, and omissions of material fact in connection with its failure to disclose to Plaintiff Eck-London, Plaintiff Freeman, and the New York Subclass that the Recalled Devices contained the dangerous material PE-PUR Foam which does not conform to the products' labels, packaging, advertising, and statements - are unfair, deceptive, and misleading in violation of GBL § 349.

242.    Because the dangers presented by the presence of PE-PUR Foam pertain to the Recalled Devices' central functionality, *i.e.*, the safety of the devices for human use, these failures reflect material facts, and Philips was obligated to disclose these material facts to Plaintiff Eck-London, Plaintiff Freeman, and members of the New York Subclass. A reasonable consumer attaches importance to such material facts and are induced to act thereon in making purchasing decisions.

243.    Because Philips failed to disclose these material facts, consumers were misled.

244.    At all relevant times, Philips had exclusive knowledge that the PE-PUR Foam present in the Recalled Devices could cause users of the Recalled Devices to suffer adverse health effects which do not conform to the products' labels, packaging, advertising, and statements.

245.    Philips further knew or reasonably should have known that there was no disclosure on the Recalled Devices' packaging, or at the point of sale, that the products contained dangerous materials that were at risk of causing users of the Recalled Devices to suffer from adverse health effects.

246.    At all relevant times, Philips knew or reasonably should have known that Plaintiff Eck-London, Plaintiff Freeman, and other members of the New York Subclass relied on the

foregoing omissions and will continue to be deceived and harmed by Philips' foregoing unfair practices.

247.    The foregoing deceptive acts and practices were directed at Plaintiff Eck-London, Plaintiff Freeman, and other members of the New York Subclass.

248.    Plaintiff Eck-London, Plaintiff Freeman, and members of the New York Subclass have been injured as a direct and proximate result of Philips' violations described above as they would not have purchased the Recalled Devices at all had they known of the aforementioned risk of suffering adverse health effects as a result of the presence of the dangerous PE-PUR Foam.

249.    As a result of Philips' unlawful action, Plaintiff Eck-London, Plaintiff Freeman, and members of the New York Subclass seek to enjoin Defendant's deceptive and unlawful acts and practices described herein to recover actual damages, fifty dollars or both, whichever is greater, as well as treble damages, reasonable attorneys' fees, and all other remedies this Court deems proper.

## SEVENTEENTH CLAIM FOR RELIEF

### NEW YORK GENERAL BUSINESS LAW

### N. Y. Gen. Bus. Law § 350 *et seq.*

### (on behalf of Plaintiff Eck-London, Plaintiff Freeman, and the New York Subclass)

250.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

251.    GBL § 350 defines false advertising as:

"advertising, including labeling, of a commodity ... if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account ( among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity . . . to which the advertising relates under the conditions

prescribed in said advertisement, or under such conditions as are customary or usual."

252.    The practices alleged herein - namely, Defendant's use of deception, fraud, false pretenses, and omissions of material fact in connection with its failure to disclose to Plaintiff Eck-London, Plaintiff Freeman, and the New York Subclass that the Recalled Devices contained that the Recalled Devices contained the dangerous material PE-PUR Foam which does not conform to the products' labels, packaging, advertising, and statements - fail to reveal material facts in respect to the Recalled Devices, and therefore violate GBL § 350.

253.    Because these practices pertain to the Recalled Devices' central functionality, *i.e.*, the safety of the Recalled Devices for human use, these failures reflect material facts, and Philips was obligated to disclose these material facts to Plaintiff Eck-London, Plaintiff Freeman, and members of the New York Subclass. A reasonable consumer attaches importance to such material facts and are induced to act thereon in making purchasing decisions. Because Philips failed to disclose these material facts, consumers were misled.

254.    At all relevant times, Philips knew or reasonably should have known that Plaintiff Eck-London, Plaintiff Freeman, and other members of the New York Subclass relied on the foregoing omissions and will continue to be deceived and harmed by Philips foregoing unfair practices.

255.    At all relevant times, Philips knew or reasonably should have known that Plaintiff Eck-London, Plaintiff Freeman, and other members of the New York Subclass relied on the foregoing omissions and will continue to be deceived and harmed by Philips' foregoing unfair practices.

256.    The foregoing deceptive acts and practices were directed at Plaintiff Eck-London, Plaintiff Freeman, and other members of the New York Subclass and have resulted in consumer injury or harm to the New York public.

257.    Plaintiff Eck-London, Plaintiff Freeman, and other members of the New York Subclass have been injured as a direct and proximate result of Philips' violations described above as they would not have purchased the Recalled Devices at all had they known of the aforementioned risk of suffering adverse health effects as a result of the presence of the dangerous PE-PUR Foam.

258.    As a result of Defendant's unlawful action, Plaintiff Eck-London, Plaintiff Freeman, and members of the New York Subclass seek to enjoin Philips' misleading and unlawful acts and practices described herein, to recover actual damages or five hundred dollars per violation, whichever is greater (or both), as well as treble damages, reasonable attorneys' fees, and all other remedies this Court deems proper.

## EIGHTEENTH CLAIM FOR RELIEF

### PENNSYLVANIA UNFAIR TRADE PRACTICES

### AND CONSUMER PROTECTION LAW

### 73 Pa. Cons. Stat. Ann. §§ 201-1 *et seq.*

### (on behalf of the Nationwide Class, or alternatively, Plaintiff Smith

### and the Pennsylvania Subclass)

259.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

260.    At all times mentioned herein, Philips engaged in "trade" or "commerce" in Pennsylvania, as defined by 73 Pa. Cons. Stat. Ann. § 201-2(3), in that they advertised, offered for sale, and sold goods, property, or services primarily for personal, family, or household

purposes, and advertised, solicited, offered for sale, and sold "services", "property", "article[s]", "commodit[ies]" or "thing[s] of value" in Pennsylvania.

261.    Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTCPL"), 73 Pa. Cons. Stat. Ann. § 201-3 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . are hereby declared unlawful."

262.    For the reasons discussed herein, Philips violated and continues to violate the UTCPL by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by UTCPL §§ 201-1 et seq. Philips' acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

263.    Philips repeatedly advertised on the labels and packing for the Recalled Devices, on Philips' websites, and through national advertising campaigns, among other items, that the Recalled Devices were safe and fit for human use. Philips failed to disclose the material information that the PE-PUR Foam used in the Recalled Devices, and therefore the Recalled Devices themselves, were unsafe and unfit for human use.

264.    Philips' representations and omissions were material because they were likely to deceive reasonable consumers to induce them to the Recalled Devices without being aware that the PE-PUR Foam used in the Recalled Devices, and therefore the Recalled Devices themselves, were unsafe and unfit for human use. As a direct and proximate result of Philips' unfair and deceptive acts or practices, Plaintiffs, members of the Class, and members of the Pennsylvania Subclass suffered damages by purchasing Recalled Devices because they would not have purchased Recalled Devices had they known the truth, and they received a product that was

worthless because it contains unsafe PE-PUR Foam which can cause a number of adverse health effects, including cancer.

265.     Philips' deceptive trade practices caused injury in fact and actual damages to Plaintiff, members of the Class, and members of the Pennsylvania Subclass in the form of the loss or diminishment of value of the Recalled Devices Plaintiff, Class Members, and Pennsylvania Subclass Members purchased, which allowed Defendants to profit at the expense of Plaintiffs, Class Members, and Pennsylvania Subclass Members. The injuries Plaintiffs, members of the Class, and members of the Pennsylvania Subclass were to legally protected interests. The gravity of the harm of Philips' actions is significant and there is no corresponding benefit to consumers of such conduct.

266.     Plaintiffs, Class Members, and Pennsylvania Subclass Members seek relief for the injuries they have suffered as a result of Philips' unfair and deceptive acts and practices, as provided by 73 Pa. Cons. Stat. Ann. § 201-9.2 and applicable law.

<u>**NINETEENTH CLAIM FOR RELIEF**</u>

**VIRGINIA CONSUMER PROTECTION ACT**

**Va. Code Ann. § 59.1-196**

**(on behalf of Plaintiff Rodgers and the Virginia Subclass)**

267.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

268.     Each Defendant is a "[p]erson" within the meaning of Va. Code Ann. §59.1-198.

269.     Each Defendant is a "[s]upplier" within the meaning of Va. Code Ann. §59.1-198.

270.     The Recalled Devices are "[g]oods" within the meaning of Va. Code Ann. §59.1-198.

271.     Philips engaged in "[c]onsumer transaction[s]" within the meaning of Va. Code Ann. §59.1-198.

272.     The Virginia Consumer Protection Act ("Virginia CPA") prohibits "fraudulent acts or practices committed by a supplier in connection with a consumer transaction." Va. Code Ann. §59.1-200(A).

273.     The Virginia CPA makes unlawful specific acts, including:

(a)     "[m]isrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits" (Va. Code Ann. §59.1-200(A)(5));

(b)     "[m]isrepresenting that goods or services are of a particular standard, quality, grade, style, or model" (Va. Code Ann. §59.1-200(A)(6));

(c)     "[a]dvertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised" (Va. Code Ann. §59.1-200(A)(8)); and

(d)     "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction" (Va. Code Ann. §59.1-200(A)(14)).

274.     Philips violated the Virginia CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose the quality of the Recalled Devices and the dangers the PE-PUR Foam posed to Recalled Device users.

275.     Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding the safety, quality, characteristics, and

benefits of the Recalled Devices, Philips engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Virginia CPA.

276.     Philips omissions and misrepresentations described herein had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs, Class, and Virginia Subclass members, into purchasing the Recalled Devices.

277.     The facts regarding the Recalled Devices that Philips knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs, members of the Class, and members of the Virginia Subclass, who consider such facts to be important to their purchase decisions with respect to the Recalled Devices.

278.     Plaintiffs, members of the Class, and members of the Virginia Subclass had no way of discerning that Philips' representations were false and misleading, or otherwise learning the facts that Philips had concealed or failed to disclose. Plaintiffs, members of the Class, and members of the Virginia Subclass did not, and could not, unravel Defendant's deception on their own.

279.     Philips had an ongoing duty to Plaintiffs, members of the Class, and members of the Virginia Subclass to refrain from unfair and deceptive practices under the Virginia CPA in the course of their business. Specifically, Philips owed Plaintiffs, members of the Class, and members of the Virginia Subclass a duty to disclose all the material facts regarding the Recalled Devices.

280.     Plaintiffs, members of the Class, and members of the Virginia Subclass were aggrieved by Philips' violations of the Virginia CPA because they were damaged as a direct and

proximate result of Philips' deceptive and unfair practices. Plaintiff, members of the Class, and members of the Virginia Subclass relied on the acts of concealment, omissions, and misrepresentations regarding the nature of the Recalled Devices. Had Plaintiffs, members of the Class, and members of the Virginia Subclass known of the dangers posed by the PE-PUR Foam in the Recalled Devices, they would not have bought the Recalled Devices, or they would not have paid the premium price that they did and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

281.    Philips' violations of the Virginia CPA, as alleged herein, Plaintiffs, members of the Class, and members of the Virginia Subclass seek an order awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Virginia CPA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against Philips as to each and every count, including:

A.   An order certifying this action and the Class and State Subclasses requested herein as a class action, designating Plaintiffs as the representatives of the Class and State Subclasses, and appointing Plaintiffs' counsel as counsel to the Class and State Subclasses;

B.   An order declaring that Philips' actions constitute: (i) breach of express warranty; (ii) breach of the implied warranty of merchantability; (iii) fraudulent misrepresentation; (iv) fraud by omission; and (v) unfair and deceptive business practices in violation of California, Florida, Massachusetts, Minnesota, New York, Pennsylvania, and Virginia consumer protection statutes, and that Philips is liable to Plaintiffs, members of the

Class, and members of the State Subclasses, as described herein, for damages arising therefrom;

C.  An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Philips from continuing the unlawful practices alleged herein, and injunctive relief to remedy Philips' past conduct;

D.  A judgment awarding Plaintiffs, members of the Class, and members of the State Subclasses all appropriate damages, in an amount to be determined at trial;

E.  A judgment awarding equitable, injunctive, and/or declaratory relief as may be appropriate.

F.  A judgment awarding Plaintiffs, members of the Class, and members of the State Subclasses prejudgment and post-judgment interest, as permitted by law;

G.  A judgment awarding Plaintiffs, members of the Class, and members of the State Subclasses costs and fees, including attorneys' fees, as permitted by law; and

H.  Grant such other legal, equitable or further relief as the Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand a trial by jury for all issues so triable.


DATED:        July 1, 2021                    Respectfully submitted,

                                              _/s/ Sean K. McElligott_____
                                              Sean K. McElligott (Mass. BBO #651710)
                                              Richard A. Silver (*pro hac vice* forthcoming)
                                              Steven L. Bloch (*pro hac vice* forthcoming)
                                              Ian W. Sloss (*pro hac vice* forthcoming)
                                              Zachary A. Rynar (*pro hac vice* forthcoming)

**SILVER GOLUB & TEITELL LLP**
184 Atlantic Street
Stamford, Connecticut 06901
Telephone: (203) 325-4491
Facsimile: (203) 325-3769
smcelligott@sgtlaw.com
rsilver@sgtlaw.com
sbloch@sgtlaw.com
isloss@sgtlaw.com
zrynar@sgtlaw.com